**TCW SPECIAL CREDITS INC., Plaintiff**

v.

**F/V KASSANDRA Z, OFFICIAL NO. 65339-0, KASSANDRA Z
FISHING COMPANY, INC., Defendants**

**MICHAEL DATIN, et al., Plaintiffs-In-Intervention**

High Court of American Samoa
Trial Division

CA No. 92-96

December 19, 1996

Before KRUSE, Chief Justice, and VAIVAO, Associate Judge.

Counsel: For Plaintiff, TCW Special Credits Inc., Barry I. Rose
and Craig Miller, *pro hac vice*
For Plaintiffs-In-Intervention, Clipper Oil Company,
A& M Ventures, Inc., and Clipper Salt Company,
Brian M. Thompson
For Plaintiff-In-Intervention, Shell Guam, Inc., Tautai
A.F. Fa'alevao
For Plaintiffs-In-Intervention, Michael Datin et al.,
William H. Reardon
For Plaintiffs-In-Intervention, Matolic Tudor et al.,
Marie Lafaele
For Plaintiff-In-Intervention, Crystal Travel, Katopau
T. Ainu'u
For Plaintiff-In-Intervention, Pago Petroleum, Inc.,
Marshall L. Ashley

Order Granting Plaintiff's Motion for Payment of Costs *In Custodia
Legis*, Denying Plaintiff's Motion to Release of Part of Proceeds, and
Denying Intervenors' Motions for Sanctions:

This matter came on for hearing December 16, 1996, upon plaintiff TCW Special Credits, Inc.'s ("TCW") motion for: 1) approval and payment of *in custodia legis* costs in the amount of $121,067.59; and 2) the release of $4,000,000 of the $6,000,000 realized at the sale of the vessel Kassandra Z. The sale proceeds are presently on deposit with the court's registry. All plaintiffs-in-intervention object to the motion and seek T.C.R.C.P. Rule 11 sanctions against TCW.

## DISCUSSION

I. Payment of *In Custodia Legis* Costs

There being no objection to the motion, and the court being satisfied that costs claimed are equitable, reasonable, and inured to the benefit of all claimants, the motion for payment of *in custodia legis* costs, in the amount of $121,067.59, from the sale proceeds, is granted. The Clerk shall disburse from the sale proceeds accordingly.

II. Release of Funds

TCW, citing no authority, but appealing to "common sense" and "equity," argues that the money now sitting in the court's registry, collecting minimal interest, could be better used. While this is true, we do not, however, believe that the wholesale release of funds to TCW is in all the parties' best interest.

TCW submits that in the "extraordinary" event that the senior claims of the crewmen are greater than $2,000,000, TCW would remain liable for that balance. TCW points to the court's Order on Motion for Interlocutory Sale, entered September 12, 1996 ("Sale Order"), as suggesting the court's prior agreement with this contention. TCW argues that the Court's setting of a minimum cash bid of $2 Million somehow translates as the Court's preliminary assessment of the worth of the senior lienholders' claims.

This argument is wrongly footed and founded on some basic misconceptions. First, the court's decision to set the minimum cash bid at $2,000,000 was not based on its estimation of the senior lienholders' claims. Rather, the court's setting of a minimum cash bid term in its Sale Order entailed a number of countervailing factors, besides the crewmen's concerns. (These countervailing factors were recited in the Sale Order.) Significantly, the court was concerned with the immediate sale of the vessel, in the interests of not only minimizing *res* deterioration and continuing *in custodia legis* expenses, but in confronting the reality of the impending hurricane season--an argument strongly canvassed by TCW at its motion for interlocutory sale, and in its opposition to plaintiff-in-

intervention, Clipper Oil Company's, subsequent motion to amend the terms of sale. The court was further concerned with enhancing sale price by not setting an overly prohibitive minimum bid, but allowing TCW to protect its interests by granting it the opportunity to credit bid--another factor strongly canvassed earlier by TCW. To this end, the court took into account market realities in American Samoa and past experience with court-ordered sale of fishing boats. At the same time, we took judicial notice of, and hence also into account, the large number of hurricane-beached fishing vessels that continue to litter the Pago Pago Bay to date. TCW's claim therefore that the court's setting of a minimum cash bid of $2 Million somehow translates as the court's preliminary assessment of the worth of the senior lienholders' claims, is fanciful and entirely erroneous.

Second, the Sale Order's reference to TCW's continuing liability to the senior lienholders' was related to the contingency of a TCW purchase of the Kassandra Z, utilizing its credit bid facility. However, the Kassandra Z was purchased by an independent third party. As such, the Sale Order has no bearing on the funds now held within the court.

Finally, TCW's continuing commitment to pay the senior lienholders' claims is simply that, a commitment. In the event that the senior lienholders' claims rise above $2,000,000, this court, if the motion is granted, would no longer have a *res* to look to, and thus would no longer have *in rem* jurisdiction over an amount above $2,000,000. Rather, the court would merely have personal jurisdiction over TCW. The court is remiss to exchange $4,000,000 in cash for TCW's word.[1]

III. Sanctions

The plaintiffs-in-intervention have moved for sanctions based on their contention that the motion to release funds is not "warranted by existing law or by a non-frivolous argument for the extension, modification, or reversal of existing law or the establishment of new law." T.C.R.C.P. 11.[2] Plaintiffs-in-intervention correctly point out that TCW cites no

---

[1] The court might entertain a motion to release funds, if the funds release were replaced with a suitable bond, or a motion which suggests alternative investment measures. However, no such motions have been filed.

[2] Plaintiffs-in-intervention base their motion for sanctions on a mischaracterization of TCW's motion as one for summary judgment. We do not believe that TCW's motion, if granted, would require this court to determine the merits of any of the underlying claims.

109

authority in their memoranda which allows for the release of funds. However, plaintiffs-in-intervention fail to cite any authority which explicitly disallows the partial release of funds once one of the claimants have partial judgment.[3] Although, the circumstances in this case warrant a denial of TCW's motion, we are not summarily dismissing the propriety of such a motion, under the proper circumstances. TCW's motion, although not persuasive, has merit under equitable principles. As such Rule 11 sanctions are inappropriate.

## CONCLUSION & ORDER

TCW's motion for payment of *in custodia legis* costs is granted, and it motion to release a part of funds is denied. Plaintiffs-in-intervention's motion for sanctions is denied.

It is so ordered.

---

[3] TCW has received a default judgment in the amount of $9,694,780.66, plus interest (entered on September 26, 1996).